UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, *as subrogee of William Neuenschwander*, | Civil No. 16-1793 (JRT/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| BMC USA CORPORATION, TD HITECH ENERGY, INC., and SAMSUNG SDI CO. LTD., | |
| Defendants. | |

Grant Sackett, **HANSON, LULIC & KRALL, LLC**, 608 Second Avenue South, Suite 700, Minneapolis, MN 55401, for plaintiff.

Jeffrey R. Mulder, **BASSFORD REMELE**, 100 South Fifth Street, Suite 1500, Minneapolis, MN 55402, and David E. Kawala, **SWANSON, MARTIN & BELL, LLP**, 330 North Wabash Avenue, Suite 3300, Chicago, IL 60611, for defendant BMC USA Corporation.

John P. Loringer, **WILSON ELSER**, 740 North Plankinton Avenue, Suite 600, Milwaukee, WI 53203, for defendant TD HiTech Energy, Inc.

Brandon Dennis Wright, **LEWIS BRISBOIS BISGAARD & SMITH LLP**, 6385 South Rainbow Boulevard, Suite 600, Las Vegas, NV 89118, and James Russell Doyle, II, **LEWIS BRISBOIS BISGAARD & SMITH, LLP**, 1180 Peachtree Street, Northeast, Suite 2900, Athens, GA 30309, for defendant Samsung SDI Co. Ltd.[1]

---

[1] Attorneys from Lewis Brisbois Bisgaard & Smith LLP appeared telephonically at the motion hearing on behalf of terminated party Samsung SDI America, Inc. On August 7, 2017, U.S. Magistrate Judge Tony N. Leung approved a "Stipulation to Add Defendant Samsung SDI Co. Ltd. and Remove Defendant Samsung SDI America." (Order at 1-2, Aug. 8, 2017, Docket No. 95.) As part of the stipulation, the parties agreed to deliver "the Amended Summons and Amended Complaint by delivering the same to Defendant Samsung SDI America, Inc.'s counsel." (*Id.* at 2.)

Plaintiff State Farm Fire & Casualty Co. ("State Farm") brings this subrogation claim based on a fire that it alleges was caused by a battery pack designed and manufactured by Defendant TD HiTech Energy, Inc. ("TD HiTech"), a Taiwanese corporation. TD HiTech moves to dismiss the claims against it under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. State Farm and the distributor of the product, Defendant BMC USA Corp. ("BMC USA"), oppose TD HiTech's motion.

Because the Court finds sufficient evidence of a regular flow of sales to the United States and the State of Minnesota, based on which TD HiTech would have anticipated being haled into court within the state, the Court will deny TD HiTech's motion.

## BACKGROUND

State Farm brings this subrogation claim for amounts it paid its insured, William Neuenschwander (the "Insured"), for property damage resulting from a fire at his home in Bloomington, Minnesota, on August 8, 2014. (Notice of Removal, Ex. A ("Compl.") ¶¶ 2, 10, June 1, 2016, Docket No. 1.) State Farm alleges that the fire originated from a charging battery that TD HiTech designed and manufactured. (*Id.* ¶¶ 8, 13.) State Farm alleges that TD HiTech negligently designed, manufactured, and/or marketed the battery, and that TD HiTech breached implied warranties with respect to the product. (*Id.* ¶¶ 20-21, 27-28.)

TD HiTech is a Taiwanese corporation, with its principal place of business in Taipei City, Taiwan, that specializes in manufacturing and selling lithium batteries.

(Decl. of TD HiTech Energy, Inc. ("TD HiTech Decl.") ¶¶ 2-3, Jan. 18, 2017, Docket No. 38.) TD HiTech contends that it does not do any direct business in or targeted at Minnesota: it does not sell goods in Minnesota, employ a sales force in Minnesota, "direct sales of its products to consumers in Minnesota," "direct advertising of its products in Minnesota," or "solicit[] business from Minnesota residents, directly or through any form of advertising expressly targeted toward the residents of Minnesota." *(Id.* ¶¶ 3-11, 15-23.) TD HiTech also contends that it "has never sought to serve the market in Minnesota indirectly or through others," nor has it "entered into any contracts, service agreements or other agreements for the purpose of promoting or advertising any product or service within" Minnesota. (*Id.* ¶¶ 12-13.)

However, TD HiTech has sold many batteries in the United States and significant numbers of its batteries have been sold to Minnesota customers. Between 2015 and February 2017, TD HiTech sold and shipped 5,836 batteries to the United States, with a total cost of more than $60 million. (Decl. of Jeffrey R. Mulder ("Mulder Decl."), Ex. 3[2] at 1-2, Mar. 31, 2017, Docket No. 69.) TD HiTech admits to having customers in California and Massachusetts, including BMC USA. (*Id.*, Ex. 1 at 4.) BMC USA has 26 customers in Minnesota, including the Insured's company, Mobile Entertainment, and BMC USA has "sold hundreds of batteries manufactured by TD HiTech to customers in Minnesota, either in connection with the sale of bikes or as stand-alone transactions." (Decl. of Markus Eggimann ("Eggimann Decl.") ¶ 5, Mar. 31, 2017, Docket No. 68.)

---

[2] BMC USA filed Exhibit 3 to the Mulder Declaration as a Sealed Exhibit at Docket No. 70.

Mobile Entertainment alone purchased ten bicycles and ten additional batteries at a cost of $30,485.00 in 2014. (Mulder Decl., Ex. 13.) Records suggest Mobile Entertainment has purchased sixty-two TD HiTech batteries since 2014. (Eggimann Decl., Exs. 2-3.) TD HiTech's website shows that its batteries are used in Stromer Electric bikes, (Aff. of Grant Sackett ("Sackett Aff."), Ex. 2, Mar. 31, 2017, Docket No. 76), and the website includes a location map with three locations in the United States, including one in the Midwest, (*id.*, Ex. 1).

State Farm contends that TD HiTech also sent an agent, Michael Fritz, to Minnesota. Fritz attended two pre-suit inspections in the Midwest – in Minnesota (this case) and Wisconsin – and his business card represents that he works for "HiTech Energy" as "eBike Battery Technical Representative North America." (Decl. of Jeffrey R. Mulder, Ex. 7 at 29, Jan. 24, 2017, Docket No. 49; Decl. of Markus Eggimann, Ex. A at 4, Jan. 24, 2017, Docket No. 50.) In response, TD HiTech states that it "did, for a limited period of time, contract with . . . Fritz[] to assist with certain local events – such as the initial investigation of the subject incident – and provide feedback to TD HiTech," but as of March 17, 2017, "Fritz [was] no longer contracted to perform this work." (Mulder Decl., Ex. 8 at 35.)

## ANALYSIS

I.    **STANDARD OF REVIEW**

Rule 12(b)(2) provides that a party may move to dismiss claims for lack of personal jurisdiction. "[A] plaintiff must state sufficient facts in the complaint to support

a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). "[T]he plaintiff bears the burden of proving facts supporting personal jurisdiction" once it has been challenged. *Id.* A plaintiff's prima facie showing of personal jurisdiction "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Dever*, 380 F.3d at 1072 (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 260 (8th Cir. 1974)). The Court resolves factual conflicts in the plaintiff's favor. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011).

"Personal jurisdiction can be specific or general." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 593 (8th Cir. 2011). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while [g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Id.* (alterations in original) (quoting *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir. 2008)). Here, State Farm asserts only specific jurisdiction over TD HiTech.

"Because Minnesota's long-arm statute is 'coextensive with the limits of due process,' the only question is whether the exercise of personal jurisdiction comports with due process." *CBS Interactive Inc. v. Nat'l Football League Players Ass'n*, 259 F.R.D. 398, 404 (D. Minn. 2009) (quoting *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus.*,

*Inc.*, 63 F.3d 694, 697 (8th Cir. 1995)). "Due process requires 'minimum contacts' between the non-resident defendant and the forum state." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). "The central question" in determining whether a defendant has sufficient minimum contacts with a state "is whether [it] has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).

> The Eighth Circuit has established
>
> a five-factor test . . . . to determine the sufficiency of defendant's contacts . . . (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.

*Burlington Indus.*, 97 F.3d at 1102. The first three factors are "of primary importance," and the Court may consider them together. *Id.*; *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996).

## II. PRIMARY FACTORS

As discussed above, the primary factors in the personal jurisdiction analysis pertain to the party's contacts with the forum state. Here, the primary dispute involves the first and second factors of the five-factor test: the quantity and nature and quality of TD HiTech's contacts with Minnesota. The question is whether TD HiTech's sale of batteries to companies in California and Massachusetts, which were then sold in other

U.S. states, including Minnesota, constitutes sufficient contacts to subject TD HiTech to suit in Minnesota.

The governing Supreme Court standard with regard to out-of-state manufacturers stems from *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 288-89 (1980). There, the Supreme Court held Oklahoma had no personal jurisdiction over a New York retailer and wholesaler that sold the plaintiffs' their vehicle in New York, and where the only connection to Oklahoma was that the plaintiffs suffered their injuries while driving the vehicle through Oklahoma. 444 U.S. at 288-89, 291. The Supreme Court concluded that while defendants may have foreseen their inherently mobile product passing through Oklahoma at some point, such a tenuous contact was not sufficient to establish personal jurisdiction. *Id.* at 295-97. But the Supreme Court recognized that an out-of-state defendant could be subject to personal jurisdiction in a forum state without setting foot in the forum: the proper inquiry being whether "the defendant's conduct and connection with the forum State [were] such that he [or she] should reasonably anticipate being haled into court [t]here." *Id.* at 297. The Supreme Court noted that the result could be different "if the sale of a product of a manufacturer or distributor . . . [was] not simply an isolated occurrence," and stated that a state could "assert[] personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297-98.

In several later Supreme Court cases, pluralities have discussed adding to the *World-Wide Volkswagen* standard, but a majority of the Court has not signed onto doing so. First, in *Asahi Metal Industry Co. v. Superior Court of California*, a majority of the

Supreme Court found that exercise of personal jurisdiction over the foreign defendant "would be unreasonable and unfair." 480 U.S. 102, 115-16 (1987). Justice O'Connor, writing for the plurality, concluded the foreign defendant did not purposefully avail itself of the forum state, adopting what has been referred to as the "stream of commerce plus" standard, under which "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112.[3] However, in two concurring opinions, five justices did not agree with the plurality's opinion: four justices would have found purposeful availment, *id.* at 117-21 (Brennan, J., concurring in part and concurring in judgment); and three justices found it unnecessary to determine whether there was purposeful availment, but noted that "[i]n most circumstances [the justices] would be inclined to conclude that a regular course of dealings that results in deliveries of over 100,000 units annually over a period of several years would constitute 'purposeful availment' even though the item delivered to the forum State was a standard product marketed throughout the world," *id.* at 121-22 (Stevens, J., concurring in part and concurring in judgment).

Accordingly, one Eighth Circuit case describes *Asahi* as "stand[ing] for no more than that it is unreasonable to adjudicate third-party litigation between two foreign

---

[3] This standard would have required "[a]dditional conduct of the defendant . . . indicat[ing] an intent or purpose to serve the market in the forum State," such as "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112. The plurality stated, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.*

companies in this country absent consent by the nonresident defendant." *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 614 (8th Cir. 1994). "[F]ive justices agreed that continuous placement of a significant number of products into the stream of commerce with knowledge that the product would be distributed into the forum state represents sufficient minimum contacts to satisfy due process." *Id.* In *Barone*, the manufacturer did not advertise, directly sell, or have an office, agent, or distributor within the state of suit; but over half of the manufacturer's business came from selling to nine distributors within the United States. *Id.* at 611. Applying *World-Wide Volkswagen*, the court found personal jurisdiction over the manufacturer due to "its network of distributors," the locations of which "suggest[ed] an effort to reach much of the country through a limited number of regional distributors." *Id.* at 613-15.

The Supreme Court, again, decided not to change the *World-Wide Volkswagen* standard in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 877-85 (2011). There, a plurality of the Court would have adopted the plurality rule from *Asahi*, finding that more than placement of a product in the stream of commerce with an expectation that it may be marketed in the forum state is required. *Id.* at 877-85. But Justice Breyer wrote a concurrence in judgment, joined by Justice Alito, and merely found that "[n]one of [the Court's] precedents finds that a single isolated sale, even if accompanied by the kind of sales effort indicated here, is sufficient." *Id.* at 888 (Breyer, J., concurring in judgment). Justice Breyer found "no 'regular . . . flow' or 'regular course' of sales," as required by the *Asahi* concurrences and also "no 'something more'" that the *Asahi* plurality would have required; thus, Justice Breyer did not choose a particular rationale

from *Asahi*, but instead found none were satisfied. *Id.* at 889 (alteration in original) (quoting *World-Wide Volkswagen*, 444 U.S. at 297-98). This choice was deliberate, as Justice Breyer stated a desire not to "change . . . the law in the way either the plurality or the [lower court] suggest[ed] without a better understanding of the relevant contemporary commercial circumstances" and without hearing from the Solicitor General. *Id.* at 892-93. Thus, Justice Breyer's narrower holding controls. *See Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 178-79 (5th Cir. 2013) (applying Justice Breyer's *Nicastro* concurrence); *Willemsen v. Invacare Corp.*, 282 P.3d 867, 873-75 (Or. 2012) (same).[4]

The contacts present in this case fall between those found insufficient for personal jurisdiction in *Nicastro* and sufficient for personal jurisdiction in *Barone*: In contrast to *Nicastro*, TD HiTech's product arrived in Minnesota as part of a "'regular course' of sales" in the United States and Minnesota, rather than as part of "a single isolated sale." 564 U.S. at 888-89. As discussed above, TD HiTech shipped 5,836 batteries – for a total of more than $60 million – to the United States between 2015 and February 2017. Hundreds of TD HiTech's batteries were sold in Minnesota since 2014, including sixty-two to the Insured's company, Mobile Entertainment. TD HiTech also involved several distributors within the United States, who presumably sold TD HiTech's products throughout the United States, benefitting TD HiTech. But, with only two distributors, there is less evidence that TD HiTech employed a "strategically placed" network of

---

[4] TD HiTech also cites *Daimler AG v. Bauman*, but that case is inapplicable because it involved general jurisdiction and thus applied the more demanding standard of "continuous and systematic" contacts with the forum state. 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 546 U.S. 915, 919 (2011)).

distributors in order to serve surrounding states, as in *Barone*. 25 F.3d at 613-15. Accordingly, the Court acknowledges that this case presents a close question; but the Court finds sufficient minimum contacts to establish personal jurisdiction based on TD HiTech's regular course of sales with distributors on both coasts of the United States.[5]

## III. SECONDARY FACTORS

The Court also finds that the final two factors, which determine the reasonableness and fairness of exercising personal jurisdiction over TD HiTech, do not counsel against finding personal jurisdiction. These factors gauge the fairness of finding personal jurisdiction, including: "the interest of the forum state in providing a forum for its residents . . . [and the] convenience of the parties." *Burlington Indus.*, 97 F.3d at 1102.

"Minnesota has an interest in ensuring both that injured Minnesotans are compensated for their injuries, and that products sold to Minnesota companies are safe." *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1021 (D. Minn. 2008). TD HiTech would face some inconvenience litigating in Minnesota as a foreign entity and because evidence and witnesses related to its manufacturing are located outside of the country. But it is far more convenient for the other parties to litigate in Minnesota and all of the evidence related to the fire is located within the state. Thus, TD HiTech has not demonstrated

---

[5] The Court also rejects TD HiTech's related argument that State Farm failed to meet the Fed. R. Civ. P. 8(a)(1) pleading standard, which requires "a short and plain statement of the grounds for the court's jurisdiction." Based on the above-described law, State Farm's allegations that "TD HiTech was in the business of importing, distributing, designing and manufacturing and/or selling various items, . . . including the battery that was used at the Insured's Residence," and that "TD HiTech availed [itself] of the laws of the State of Minnesota by placing into the stream of commerce a product that was distributed, sold and used in the State of Minnesota" are sufficient to meet the Rule 8 pleading standard. (Compl. ¶¶ 8-9.)

sufficient hardship to preclude personal jurisdiction, given that the Court finds sufficient contacts. *See Asahi*, 480 U.S. at 114 ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (finding that where the defendant has sufficient minimum contacts with the forum state, "he [or she] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable").

The Court will therefore exercise personal jurisdiction over TD HiTech because TD HiTech has sufficient minimum contacts with the state through its regular course of business resulting in its products being sold in the state and because exercising personal jurisdiction over TD HiTech is reasonable under the present circumstances.

**ORDER**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that TD HiTech's Motion to Dismiss [Docket No. 36] is **DENIED.**

DATED: September 27, 2017         _____s/John R. Tunhiem_____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                                       Chief Judge
                                              United States District Court